Bristol v. Bristol.

---

MARTHA A. BRISTOL, EXECUTRIX, vs. GEORGE D. BRISTOL AND OTHERS.

A testator made the following bequest:—"I authorize my executrix to disburse from my estate to such worthy persons and objects as she may deem proper, such sums as it is her pleasure thus to appropriate, not to exceed in all five thousand dollars." Held to be invalid.

If the gift had been of the amount to her, with authority thus to use the money, it would have been valid.

It could not be made a trust, as the beneficiaries were wholly uncertain and the payment to them left wholly to the pleasure of the executrix.

A gift of personal property that lapses goes to the residuary legatees.

The testator, after making sundry bequests, gave all the residue of his estate to certain trustees and their successors, as a permanent fund, the income of which was to be applied as follows:—An annuity of one hundred dollars to E. C. for her life; of the remaining income, one half to the New Haven Orphan Asylum, one eighth to the New Haven Home of the Friendless, and one eighth to the Connecticut Humane

Society, with the following provision as to the remaining quarter:—"I authorize, empower and direct my wife to permanently dispose of the same for such charitable purposes as she may deem proper." Held—

1. That this provision was void for uncertainty as to the charitable purposes intended, while it could not take effect as a gift to the wife.

2. That the bequest was not saved by a written designation made by the widow of certain charitable purposes which she selected.

3. That the invalidity of the disposition of this quarter of the income, did not invalidate the gift of the other three quarters.

4. That the quarter of the fund, the disposition of the income of which was held invalid, went to the heirs at law as intestate estate.

5. That the heirs would take a quarter of the principal of the fund and not of the income.

6. That the annuity to *E. C.* with which the whole fund was primarily charged, could be apportioned, and three quarters of it assigned to the three quarters of the income going to the charitable societies, and one quarter to the quarter of the fund taken by the heirs.

7. That the executors could retain an ample portion of the quarter of the fund going to the heirs, to secure the quarter of the annuity to *E. C.*

[Argued June 9th—decided December 14th, 1885.]

SUIT for advice as to the construction of a will and as to the validity of certain bequests in it; brought to the Superior Court. The following facts were found by the court:

Julius D. Bristol died on the 29th of August, 1884, possessed of a considerable estate, real and personal, and leaving a will, of which the following parts are important to the present case. He made his wife, Martha A. Bristol, his executrix:

"*Item eleventh.* I hereby authorize and empower my executrix hereinafter named to disburse and give (in furtherance of my wishes expressed to her at sundry times,) from my estate to such worthy persons and objects as she may deem proper, such sums as it is her pleasure thus to appropriate, not to exceed in all the total sum of five thousand dollars.

"*Item twelfth.* I give and bequeath all the rest and residue of my estate of every name and nature and wherever the same may be situate, unto William T. Bartlett and Edward A. Chatfield, both of the city and county of New Haven, Connecticut, and Edward W. Twitchell, of South-

ington, Connecticut, and their successors to be designated and appointed as hereinafter set forth, as a board of trustees, to hold, invest, re-invest, manage and preserve as a permanent fund in trust for the uses, purposes and subject to the directions by me herein set forth and for the objects herein indicated, which fund shall be called The J. D. Bristol Benevolent Fund of Southington, Connecticut, and the object of the trust is to provide a permanent fund with a perpetual income, from which income shall be paid the annual annuities hereinafter given and set forth.

"I do hereby direct said board of trustees to pay from the interest, income and profits accruing from said fund, the sum of one hundred dollars annually to Emeline Cook, of said town of Southington, during her natural life. I do hereby further direct that the residue and remainder of said interest, income and profit accruing from said fund shall be annually divided by said board of trustees and paid as follows, viz: One half of said remaining interest, income and profit shall be paid annually to the New Haven Orphan Asylum, a body politic and corporate and located in New Haven, Connecticut. One eighth of said remaining interest, income and profit shall be paid annually to the Home of the Friendless, a body politic and corporate and located in New Haven, Connecticut. One eighth of said remaining interest, income and profit shall be paid annually to the Connecticut Humane Society, a body politic and corporate and located in said state of Connecticut. And I do hereby authorize, empower and direct my beloved wife, Martha Amelia Bristol, to permanently dispose of, for such charitable purposes as she may deem proper, the other one fourth of said remaining interest, income and profit accruing from said permanent trust fund."

The will then provided for the appointment of successors to the trustees named and for a perpetuation of the board of trustees.

The second item of the will gave the widow $40,000. The third item gave $30,000 to his son George D. Bristol, who was his sole heir at law, and who was the defendant in

the case. Items four to ten were minor bequests to individuals of sums ranging from $200 to $1,250. The whole estate amounted to $169,428.

The widow, on the 18th day of May, 1885, made and filed in the probate court the following instrument, intending thereby to make a permanent disposition for charitable purposes of the fourth of the income of the trust fund, of which by the will she was empowered to designate the charitable objects:

"To William T. Bartlett, Edward A. Chatfield and Edward T. Twitchell, trustees under the will of Julius D. Bristol, deceased, and to their successors:

"I, Martha Amelia Bristol, widow of the said Julius D. Bristol, deceased, in virtue of the power and authority conferred upon me by the twelfth item of said will of said deceased testator, to permanently dispose of, for such charitable purposes as I may deem proper, the one fourth of the interest, income and profits accruing from the trust fund created by said twelfth item of said will, do hereby designate and appoint The Hartford Hospital, in the city of Hartford, to be applied by the directors thereof to the humane purposes of the department in said institution known and designated as The Old Peoples' Home, and The General Hospital Society of Connecticut, located in the city of New Haven, as the corporations to which said one fourth of said interest, income and profits accruing from said fund shall be annually divided by said board of trustees, and paid as follows, viz: one half of the interest, income and profits accruing from said trust fund to each of said corporations. Dated at New Haven this 18th day of May, 1885.           MARTHA AMELIA BRISTOL."

The questions raised by the plaintiff and as to which the advice of the court was sought, were as follows:—

1st. Whether the authority and power given in the eleventh item of the will to the executrix of the testator to disburse or appropriate a sum not to exceed in all five thousand dollars, is or is not a valid bequest.

2d. In the event of this bequest being adjudged to be

invalid, whether said sum of five thousand dollars or any part thereof, and if so what part, falls into the rest and residue of the estate or becomes intestate estate.

3d.   Whether the provisions, devises, trusts, and powers granted and created under the twelfth item of the will, or which it was sought or intended to grant or create by that section, are valid or invalid, and which of them are valid and which invalid.

4th.   In the event of any of the provisions, devises, trusts, and powers granted and created by said section, or which it was sought or intended to grant thereby, being adjudged to be invalid, then to whom and in what proportions said rest and residue of the estate will go and of right belong.

The case was reserved by the court for the advice of this court.

*J. K. Beach*, with whom was *J. S. Beach*, for the plaintiff.

1.   The bequest in the eleventh item of the will is valid. It clearly does not create a trust, but is an authority to the widow to take $5,000 from the estate and use it for such benevolent purposes as she pleases.   As the use of it can not be enforced by a court of equity, she takes it with only a moral obligation to use it as the testator requested.   The matter is committed to her conscience and there it is left by the courts.   *Robinson* v. *Dusgate*, 2 Vernon, 181; *Morice* v. *Bishop of Durham*, 9 Ves., 399; *Bardswell* v. *Bardswell*, 9 Sim., 320; *Bull* v. *Bull*, 8 Conn., 48; *Gilbert* v. *Chapin*, 19 id., 345; *Harper* v. *Phelps*, 21 id., 257.   Even if the title does not thus vest in the widow as a legatee, yet the bequest will be sustained as a power of appointment and disposition over the fund.   In *Wait* v. *Huntington*, 40 Conn., 9, the court say that "it is familiar law that a testator may confer on executors and on others absolute power of appointment and disposition over his property."

2.   The twelfth item of the will creates a valid trust. As to the provision directing the trustees to pay over one half the income to the New Haven Orphan Asylum, one

eighth to the Home for the Friendless, and one eighth to the Connecticut Humane Society, no criticism is anticipated. The testator "directs" his wife "to permanently dispose of" the other fourth "for such charitable purposes as she may deem proper." It is not left to her discretion to dispose of this one quarter or not to dispose of it; she is "directed" to do it. Nor is she allowed to scatter it in private charity from year to year as the impulse of the moment directs; but her choice is to be made but once and for all time. She is to dispose of it "permanently,"—that is, to some institution or institutions of a "permanent" character; thus clearly and necessarily limiting the executrix to a choice among public or corporate as distinguished from private and individual *cestuis que trust*. The character of the *cestuis que trust* is still further limited by the testator to those existing for "charitable purposes." To such purposes only is the executrix allowed to dedicate the remaining one quarter of the fund. The proposition for which the complainant contends then appears to be this: That a testator may devote the income of a trust fund to public charitable purposes, and may direct his executor to nominate from that class of beneficiaries one or more permanent *cestuis que trust*. But the case of *Coit* v. *Comstock*, 51 Conn., 353, recently decided by this court, holds with careful precision and clearness that when the intention of the testator to create a public charity is clearly expressed, and a mode of selection from a definite class of beneficiaries is provided, the trust will be sustained. In this case it will be observed that the *administration* of the charity is not given to the testator's wife. She is but his authorized agent to elect a "permanent" institution existing for "charitable purposes," to whom the income of the fund shall ever thereafter be paid by the trustees. The actual administration of the charity to the ultimate beneficiaries is conducted by such institution; and the wife's duty is once for all performed by a simple nomination. All the machinery of the trust is complete. The trustees are appointed and their duties defined; the fund is set apart, and the intention to dispose of it in support of some public

Bristol *v.* Bristol.

charity clearly expressed. One thing only remains, to-wit: to nominate the specific public charity to which the fund should be applied. This the testator authorizes and directs his wife to do. And unless a court of equity will forbid her to exercise this power of nomination, the trust is valid, and has already been made effective by the nomination of the Hartford Hospital and the New Haven Hospital, to receive in equal shares the one fourth part of the income of the trust fund created by the twelfth item of the will.

*J. Halsey* and *A. Brandegee*, for George D. Bristol, the heir at law.

1. It is a settled principle of Connecticut law that a gift to charity will not be upheld unless—1st, the general objects of the charity are defined with reasonable certainty; and, 2d, a mode is provided by which the particular beneficiaries of the trust may be ascertained. *Greene v. Dennis*, 6 Conn., 299; *Bull v. Bull*, 8 id., 48; *Langdon v. Plymouth Congregational Society*, 12 id., 114; *Brewster v. McCall's Devisees*, 15 id., 277; *Am. Bible Society v. Wetmore*, 17 id., 181; *White v. Fisk*, 22 id., 50; *Town of Hamden v. Rice*, 24 id., 355; *Treat's Appeal from Probate*, 30 id., 116; *Proprietors of White School House v. Post*, 31 id., 240; *White v. Howard*, 38 id., 354; *Adye v. Smith*, 44 id., 67; *Hughes v. Daily*, 49 id., 34; *Crum v. Bliss*, 47 id., 603; *Fairfield v. Lawson*, 50 id., 513; *Coit v. Comstock*, 51 id., 379. The Connecticut doctrine has been recognized and adopted in the state of New York. *Levy v. Levy*, 33 N. York, 100; *Bascom v. Albertson*, 34 id., 593; *Prichard v. Thompson*, 95 id., 79. The last case closely resembles the one now before the court. All the authorities agree that if the trust attempted to be created is so vague and indefinite as to be incapable of judicial administration, it is void. Perry on Trusts, § 729; *Harper v. Phelps*, 21 Conn., 270; *Adye v. Smith*, 44 id., 67; *Crum v. Bliss*, 47 id., 603; and the cases above cited from the 33d, 34th and 95th N. Y. Reps.

2. The execution of the power of disposition by the

wife does not cure the radical defect in the will. This is precisely the course adopted in *Adye* v. *Smith*, 44 Conn., 61. The finding in that case shows " that the executor was ready and desirous to dispose of the fund for certain benevolent purposes selected by him." But the court held that such a defect could " not be cured by *any action* on the part of the trustee, for the testator must for himself define the objects of his bounty, *and cannot delegate this power to another.*" And at the close of the opinion: " If such purpose had been specified in the will it would have been valid. But no action or statement on the part of the trustee can avail *in the least* to cure a radical defect in the will. It is the will of the testatrix, *not that of the trustee*, which is to stand or fall, and to use the language of Sir William Grant, in *Morice* v. *Bishop of Durham*, the question is not whether the trustee *may* apply the estate upon purposes strictly charitable, but whether he is *bound* so to apply it." So also in *Crum* v. *Bliss*, 47 Conn., 603, the court say— " The will must be carried out as made if it is to be carried out at all."

3. The bequest in the eleventh item of "such sum, not to exceed $5,000, to disburse to such worthy objects as she may deem proper," is, if possible, still more objectionable, on all the grounds above stated. It is not given to charity, nor even to benevolence. It is uncertain both as to amount and as to objects. It would not be sustained either in England or Massachusetts. All the authorities condemn it. The doctrine of *cy pres* has never been stretched to cover such an indefinite disposition as this. *Adye* v. *Smith*, 44 Conn., 69; *Chamberlain* v. *Stearns*, 111 Mass., 267, and cases there cited.

4. The bequest in the twelfth item of the will being of portions of the income, and not of the *corpus* of the fund, if inoperative as to any portion, the whole bequest is void. The trust is entire, and cannot be enforced in part. *Levy* v. *Levy*, 33 N. York, 97 ; *Commonwealth* v. *Levy*, 23 Gratt., 21. The object of the trust is stated in the will to be " to provide a permanent fund, with a perpetual income, from

which income shall be paid the annual annuities hereinafter given and set forth." The estate is thus given to the trustees and their successors in perpetuity, to divide the income therefrom annually, and pay it over in the proportions named, and to the institutions named, and for the purposes to be designated. If the disposition is void as to any of the portions, it cannot be divided among the other beneficiaries, for, by the terms of the bequest, they are only to receive aliquot portions of the whole income. If the bequest had been of aliquot portions of the fund, instead of the income, this difficulty would not arise. But as it is, the difficulty affects the entire trust for the reason stated, and for the reason that the fund is to be held in perpetuity, and the uses to which a portion of the income is to be applied are not within the provisions of the statute permitting a perpetuity. *Coit* v. *Comstock*, 51 Conn., 386. The bequest of the remaining quarter of the income, if void, does not fall into the residue. " Residue means all of which no effectual disposition is made by the will, other than the residuary clause ; but where the disposition itself fails, to the extent to which it fails, the will is inoperative." *Skrymsher* v. *Northcote*, 1 Swanst., 566 ; *Cheslyn* v. *Cresswell*, 3 Bro. P. C., 246 ; *Bagwell* v. *Dry*, 1 P. Wms., 700 ; *Page* v. *Page*, 2 id., 489 ; *Leake* v. *Robinson*, 2 Mer., 363, 392 ; *Sykes* v. *Sykes*, L. R., 3 Ch. App., 301 ; *Sohier* v. *Inches*, 12 Gray, 385. The bequest in the eleventh item being void, the legacy therein named falls into the residue. If the bequest of the residue in the twelfth item or any portion is void, such estate is intestate.

*C. R. Ingersoll*, for the charitable societies named in the twelfth clause of the will.

*First.* A valid trust is created by the provisions of item twelfth of the will. By it the testator bequeaths the residue of his estate to trustees, in perpetuity, for certain charitable purposes therein indicated. Subject to the life annuity of $100 to Emeline Cook, the income of the trust fund is directed by the testator to be annually divided between

certain charitable institutions, namely, the New Haven Orphan Asylum, in the proportion of one half, the Home of the Friendless and the Connecticut Humane Society, each in the proportion of one eighth, and the remaining one fourth part the testator "directs" his "beloved wife, Martha A. Bristol, to permanently dispose of for such charitable purposes as she may deem proper." It is objected that the trust estate is not within the statute relating to charitable uses and therefore is not secured to the uses to which it has been granted "according to the true intent and meaning" of the testator, because his "true intent and meaning" as to the disposition of the remaining one fourth of the income, (after the appropriation of the other three fourth parts to the charitable institutions named,) is so vaguely and uncertainly expressed that the law cannot effectuate it; and that consequently the entire trust must fail.

1. We submit, in the first place, that there is no such difficulty in ascertaining the intention of the testator; and that, on the contrary, his intention is clear to devote the entire income of the trust fund (saving only the life annuity) to certain "charitable" purposes within the purview of the statute. What he meant by charitable purposes is clear. Whatever popular significance the word "charitable" may have, the testator seeking to raise a trust, in perpetuity, for charitable purposes, must be presumed to use it in the sense of the statute. For otherwise his bequest would fail, and his intention could not be carried out. "If there are two meanings of a word, one of which will effectuate and the other will defeat the testator's object, the court is bound to select that meaning of the word which will carry out the intention and objects of the testator." *Whicker* v. *Hume*, 7 H. L. Cas., 154; *Saltonstall* v. *Sanders*, 11 Allen, 455. The word "charitable," in our court of chancery, as in that of England, has a "well known and acknowledged meaning." *Hamden* v. *Rice*, 24 Conn., 350. "A technical meaning." *Adye* v. *Smith*, 44 Conn., 71. And this is the meaning of the word in our statute. That meaning has been concisely expressed as "a gift to a general public use which extends

to the poor as well as the rich," or "whatever is given for
the love of God, or for the love of your neighbor in the cath-
olic and universal sense," as distinguished from that which,
in its motive, is "personal, private or selfish." *Jackson* v.
*Phillips*, 14 Allen, 555. And it is this sense that courts of
chancery give to the word when seeking for the intention of
a testator in the construction of wills. Solely for the want
of this word the court were not able to discern the testator's
intention in *Adye* v. *Smith*. But the presence of the word
enabled the court to sustain the trust in *Schouler, Petitioner*,
134 Mass., 426. And this statutory meaning has such force
that it will give its own sense to other words of a different
legal sense with which it may be united. A gift to " char-
itable or benevolent " purposes is a good charitable gift in
Massachusetts, " whose system of jurisprudence relative to
trusts for charity is similar to our own," as this court say in
*Adye* v. *Smith*. *Saltonstall* v. *Sanders*, 11 Allen, 446; *Rotch*
v. *Emerson*, 105 Mass., 431; *Chamberlain* v. *Stearns*, 111 id.,
267; *Suter* v. *Hilliard*, 132 id., 412. The sense in which
the testator used the word is also indicated by the character
of the other institutions which are, in the context, made his
beneficiaries, in perpetuity. They are " charitable " insti-
tutions in the statutory sense.

2. The purpose of the trust being certain and lawful, the
beneficiaries are also made certain; and the trust can there-
fore be executed and administered by a court of chancery.
In *Coit* v. *Comstock*, 51 Conn., 379, this court say that where
a definite class of beneficiaries is described, and a mode is
provided for the selection of the particular objects of the
bounty, the uncertainty is reduced to certainty. The mode
provided by the present testator for their selection is not
only a very certain one, but is otherwise commendable. He
leaves that duty to his wife—the one most likely to be pos-
sessed of his wishes, and he, at the same time, gratifies him-
self by testifying in this becoming manner his confidence in
her. In *Brown* v. *Kelsey*, 2 Cush., 243, the devise was " for
the promotion of such religious and charitable enterprises as
shall be designated by a majority of the pastors composing

the Middlesex Union Association," and it was held suffi-
ciently certain, and the appointees of the association took
the bequest. In *Wells* v. *Doane*, 3 Gray, 201, the devise to
such charities as should be deemed most useful by the ex-
ecutor of the life tenant was held good. In *Waldo* v. *Caley*,
16 Ves., 206, the charitable objects were such as "my said
wife shall judge most worthy and deserving." And see cases
cited in *Saltonstall* v. *Sanders*, (*supra*).

3. But if the provision respecting the one fourth remain-
ing part of the income should fail, the other trusts of item
twelfth would be unaffected by it. "Where a will contains
different trusts, some of which are valid and others void or
unauthorized by law, or where there are distinct and inde-
pendent provisions as to different portions of the testator's
property, or different estates or interests in the same por-
tions of the property are created, some of which provisions,
estates or interests are valid and others invalid, the valid
trusts, provisions, estates or interests created by the will of
the testator will be preserved; unless those which are valid,
and those which are invalid, are so dependent upon each
other that they cannot be separated without defeating the
general intent of the testator." *Van Vechten* v. *Van Vegh-
ten*, 8 Paige, 104, 120; *Irving* v. *De Kay*, 9 id., 521. In the
present case the trusts are distinct, and, without any diffi-
culty, separable. Nor is the general intent of the testator
defeated by such separation. The claimed uncertainty at-
taches only to the remaining "one fourth part" of the in-
come, and the only trust that can result to the heir at law
by reason of such uncertainty is in respect to that one fourth
part simply. There is no more difficulty in making the sep-
aration than there would be if the testator had expressly
provided that the principal should be held for the benefi-
ciaries, in separate portions, according to the proportions in-
dicated. Indeed, the bequest of the interest or produce of
a fund, without limitation as to time, is regarded as a be-
quest of the fund itself. 2 Roper on Legacies, 371; *Sproul's
Appeal*, 105 Penn. St., 438.

*Second.* If item eleventh of the will is inoperative, the

attempted bequest falls into the residuum. *Hayden* v. *Stough-ton*, 5 Pick., 537; *Thayer* v. *Wellington*, 9 Allen, 295; *Greene* v. *Dennis*, 6 Conn., 292, 305; *Phelps* v. *Robbins*, 40 id., 250; *James* v. *James*, 4 Paige, 115.

LOOMIS, J. This case involves the construction of two clauses in the will of Julius D. Bristol and the question of their legality.

The eleventh clause of the will is as follows:

"I hereby authorize and empower my executrix to disburse and give (in furtherance of my wishes expressed to her at sundry times) from my estate to such worthy persons and objects as she may deem proper, such sums as it is her pleasure thus to appropriate, not to exceed in all the total sum of five thousand dollars."

Is this a valid gift? It clearly is not a trust. There is no person or object named, or even hinted, as the *cestui que trust*. There is no person who could claim in a court of equity an enforcement of the trust. It is a case where, if the five thousand dollars had been given to the executrix to be disposed of at her pleasure, the law would regard the property given as vested in her, while the direction for its use was merely precatory and of no legal force. In such a case the law regards the legatee as taking the gift absolutely and with no enforceable duty as to its use.

But there is no gift to the executrix. She has merely a power of distribution. Nothing vests in her. It is precisely as if no disposition whatever of the fund had been suggested, but the executrix had been empowered to direct how five thousand dollars of the estate should go. It is, in other words, an authority given to a third person to direct how a part of the testator's property should be disposed of. If good for a part of the estate it would be good for the whole. Would then a will in the following words be a valid one: "I direct that *A B* shall declare how all my property shall be disposed of."

The supporters of this will say that such a will would be valid, and quote in support of their claim a dictum of Judge

SEYMOUR in *Wait* v. *Huntington*, 40 Conn., 11, as follows : "It is familiar law that a testator may confer on executors and on others an absolute power of appointment and disposition over his property." But the case itself did not call for this remark nor involve the question of its correctness, and it seems hardly probable that the learned judge intended that it should have the wide application given it.

There is a singular absence of all reference to this question in the text books, and we have found no decisions that bear with any directness upon it. In the absence of such authority we should regard such a will as of no legal effect. We think the law never intended to accept as a valid will so vague and indefinite a direction, such a mere authority. It is in no proper sense a will. It indicates no intent whatever on the part of the testator as to the disposition of his property. It is really a public declaration that he has no such intent. It is a travesty of terms to call such an instrument a will.

The bequest being inoperative, the five thousand dollars appropriated by it falls into the residue. This is the well-settled rule in the case of void bequests of personal property. *Greene* v. *Dennis*, 6 Conn., 292; *Thayer* v. *Wellington*, 9 Allen, 295; *James* v. *James*, 4 Paige, 115.

The remaining question arises under the twelfth clause of the will, which is as follows :

" I give and bequeath all the rest and residue of my estate of every name and nature whatever and wherever the same may be situated, unto William T. Bartlett and Edward A. Chatfield, both of the city and county of New Haven, and Edward W. Twitchell of Southington, Connecticut, and their successors to be designated and appointed as hereinafter set forth, as a board of trustees, to hold, invest, reinvest, manage and preserve as a permanent fund, in trust for the uses and purposes and subject to the directions by me herein set forth and for the objects herein indicated, which fund shall be called The J. D. Bristol Benevolent Fund of Southington, Connecticut, and the object of the trust is to provide a permanent fund with a perpetual in-

come, from which income shall be paid the annuities herein-
after given and set forth."

The testator then gives one hundred dollars a year from
the income of the fund to Emeline Cook, during her natural
life, and directs that, from the remainder of the income, there
shall be paid one half to the New Haven Orphan Asylum,
one eighth to the Home of the Friendless in New Haven,
one eighth to the Connecticut Humane Society, and the re-
maining quarter he disposes of by the following clause:

"And I do hereby authorize, empower and direct my be-
loved wife, Martha Amelia Bristol, to permanently dispose
of, for such charitable purposes as she may deem proper, the
other one fourth of said remaining interest, income and profit
accruing from said permanent trust fund."

It is very clear that this is not a gift to the wife herself,
which she can take discharged of the trust, as it merely gives
her a power to appoint the charitable use. Is it then valid
as a gift to charitable uses under our statute on that sub-
ject?

Whatever might be held on this question by the courts of
England, or of those states which have adopted the English
doctrine on the subject, it is very clear that under our own
decisions, which have established a definite rule on the sub-
ject in this state, this bequest can not be held valid. It is
well established with us that a gift to a charitable use must
designate the particular charitable use by making the gift
to some charitable corporation, whose charter provides for
a charitable use of its funds, or to some particular object or
purpose that the law recognizes as charitable. It is enough
if the object be mentioned, and the law can see that it is a
charitable one; but it is not enough that the gift be merely
"to charitable uses" or "to be used in charity," so long as
no selection is made from the long list of recognized charita-
ble objects. And it is not enough that some person is named
to whom is given the power of naming the charity. That is
the testator's own matter. It is his intent that is to deter-
mine that. If he chooses to leave the matter wholly to the
discretion of some person named, he can do so by making

the gift to him, leaving him to use his discretion as to the disposition of it. In this case the donee takes absolutely, and the law does not trouble itself as to whether he acts conscientiously in the matter. The testator has chosen to leave the matter to uncertainty and there the law leaves it.

The charitable object, thus required to be named, may be a benefit to a class of persons and therefore uncertain as to the particular persons of the class that are to receive the benefit. This uncertainty may make the bequest void. unless there is a power given to some person or corporation to make a selection of the individuals. *White* v. *Fisk*, 22 Conn., 50; *Adye* v. *Smith*, 44 id., 70; *Fairfield* v. *Lawson*, 50 id., 513; *Coit* v. *Comstock*, 51 id., 379; *Tappan's Appeal from Probate*, 52 id., 412. Here the power given the widow is not to select the particular beneficiaries of a class named, but to select the charity itself. We think that, to uphold this bequest, we should have to go beyond the utmost limit to which we have gone in upholding charitable gifts.

The bequest being of such a character, it clearly can not be saved by the act of the widow in making a written designation of the charitable purposes which by it she is authorized to select.

If this gift can not be sustained, then it is claimed that the entire trust fund falls with it.

But the principle to be applied is well settled, that where a trust is for several purposes, some valid and some invalid, it will be supported so far as it is good, provided such part is separable from the rest and no violence will thereby be done to the testator's general intent. 3 Jarman on Wills, (Am. ed.,) 709; 1 Redfield on Wills, 428; *Sears* v. *Putnam*, 102 Mass., 9; *Benedict* v. *Webb*, 98 N. York, 460. But the case of *Coit* v. *Comstock* 51 Conn., 352, was cited in argument to show that the trust was inseparable. In that case however the annual income of the trust fund was to be expended, so much as might be necessary, in putting and keeping in good order certain burial lots and monuments, and. the remainder for the support of religious services in connection with the ecclesiastical society that was named as

trustee. The bequest for the care of the burial lots was invalid, but it was not separable for the reason that it was impossible to tell how much of the income would be required for the burial lots or that it might not take the whole and leave nothing to be applied to the valid charity.

In the case at bar it is admitted that if the residue were given, in different portions, to different objects, each would be independent of the others, and a failure of any one of them would not affect the others. But it is said that here the gift is of different portions of the *income* only, so that the shares, being shares only of a common income, can not be severed in advance, or in any other way except by a division of the income. The question raised here is not without practical difficulty. It is of course out of the question that the quarter of the income should *in perpetuo* be distributed to the heirs at law. If the quarter is set apart for them at all, it clearly must be in the principal. The testator, whose intent is to govern so far as practicable, clearly intended that the benefit of three quarters of the fund should go to the charitable institutions named. This plain intent clearly should not be allowed to fail if there is any way by which the quarter share of the heirs at law in the income can be severed from the rest. This can only be done by a division of the principal of the fund, setting aside for distribution as intestate estate one quarter of it, and preserving the other three quarters for the trust fund. This can do no possible injustice to any party interested, unless the part set to the heirs should increase in value, making the income from it larger in proportion than that from the trust fund, in which case the charitable institutions would be losers; or unless the trust fund should increase disproportionately in value, making a corresponding loss to the heirs at law. But the loss or gain on either side would probably be very small, while the chances are equal, and the advantage to both the trust fund and the heirs in thus severing their interests would be very great.

The matter stands at this point precisely as it would if a

testator should direct that his property go into the hands of trustees and the income be divided into ten equal parts and paid over annually to "the following charitable corporations, one part to each;" and should then by mistake name only nine charitable corporations, leaving the tenth part undisposed of and therefore intestate.  Now must all these nine charitable bequests, all legal in themselves, fail, simply for this oversight?  The testator's one great intent was to give his property in charity, and not to give a dollar to his heirs, who were perhaps remote collaterals.  Shall this great intent wholly fail, and the other non-intent completely succeed?  This would be doing great injustice to the testator and great despite to his intent.  What is the technical difficulty?  Simply this—that if the fund is at once divided into ten parts and one part given to the heirs at law, these heirs may not get an exact tenth, or the other nine tenths may some time or other yield more than nine tenths of the income.  If they yield less that is of course the loss of the charitable societies ; but that is of no consequence, as they do not complain.  The only complaint is from the heirs at law—that they may not get the full tenth.  But the heirs have this advantage—they get their tenth of the fund down, at once, and at market value ; so that they can at once turn it into money if they choose ; while the other nine tenths are to be kept a long time and may in part be lost or reduced in value.  In the whole matter the heirs have the advantage.

Now can it be that this small risk—not only very small, but very remote and merely speculative, is to be allowed to defeat the great prevailing, manifest, legal intent of the testator, and that too in favor of heirs at law to whom it was his clear intention to give nothing ?  Such a result would seem to be a reproach to the law.

It is true that this is a division of the principal, while the testator, in the case we are supposing, intended only a division of the income.  But it is well settled that an absolute gift of all the income of property is a gift of the property itself.  The donor in such a case retains nothing, and

gives no interest to any other person than the donee. In the case before us the departure from the exact intent of the testator is only as to the mode of carrying out his cherished object, not a substitution of one object for another. There is nothing of the *cy pres* doctrine in it.

We think therefore that one quarter of the residue now devoted to the trust fund, should, upon a fair estimate of values, be separated from the trust fund and distributed as intestate estate to the heirs at law.

A question of some practical difficulty arises with regard to the annuity of one hundred dollars in favor of Emeline Cook, which is charged for her life upon the entire trust fund. It is clear that the reduced trust fund should pay but three quarters of this and that the other quarter should be paid from the quarter of the residue that goes to the heirs. This annuity is charged upon the whole residue and therefore as much upon the quarter that goes to the heirs as upon the three quarters that goes to the trust fund. Unless the parties agree upon some arrangement that shall dispose of this small charge, the trustees should retain, either the whole of the residue until Mrs. Cook's death, or an ample amount from the quarter distributed to the heirs to yield with certainty the sum of twenty-five dollars per year, the same to be distributed to the heirs at law upon the death of Mrs. Cook.

The claim is made in behalf of the charitable institutions taking under the residuary clause, that this quarter of the income, or of the principal if we so treat it, upon the legacy in question failing, goes into the residue, thus preserving the trust fund unimpaired and increasing their beneficial interest under it. But this clearly can not be so. The residue spoken of in the will is the residue after the payment of the preceding bequests, and clearly can not, either in law or reason, take back into itself a part of the residue itself that has dropped out by not having been legally disposed of. It necessarily becomes intestate estate.

CARPENTER and STODDARD, Js., dissented from so much

of the opinion as held the bequest of the fourth of the income of the trust fund to charitable purposes to be designated by the widow invalid, but concurred in holding that the bequest of the other three fourths of the income to the charitable societies named was valid. PARK, C. J., and GRANGER, J., dissented as to the validity of the bequest of the remaining three fourths of the income of the trust fund. All the judges concurred in the opinion except as to the points of dissent noted.