## THE GREENWICH TRUST COMPANY, TRUSTEE
### (Estate of Jessie M. Converse)
*vs.*
## JOHN HAMILTON TYSON ET AL.

Superior Court     Fairfield County     File No. 61770

MEMORANDUM FILED AUGUST 22, 1941.

*Hirschberg, Pettengill, Strong & Deming,* of Greenwich,. for the Plaintiff.

*Cressy, Bartram, Melvin & Sherwood,* and *Durey, Pierson. & Comley,* of Stamford; *William L. Tierney* and *William L.. Tierney, Jr.,* of Greenwich; and *Keogh & Candee,* of South· Norwalk, for the Defendants.

CORNELL, J. It is recited in the amended complaint that on November 12, 1931, defendant John Hamilton Tyson· (hereinafter called the "settlor") transferred to The Green· wich Trust Company (hereinafter referred to as the "trust company"), certain real and personal property of the total value of $238,438.82, in trust for the purposes described in: an indenture executed by the parties on that date. The trust. company accepted the trust and administered it until on or about October 19, 1939. On the latter date, it resigned as trustee and thereupon by a decree of this court the defendant William L. Tierney, Sr. was substituted as successor trustee and has since been and now is acting in that capacity.

On June 12, 1940, the plaintiff as trustee on another estate, viz., that of Jessie M. Converse, recovered judgment against the settlor in the Superior Court in this State in the sum of $23,220 and costs. This, it is alleged, the settlor has refused to pay and the amount named, together with interest thereon· since accrued, is admitted, for the purpose of demurrer, to be owing. The present action which is one in the nature of a creditor's bill authorized by statute in certain cases (Gen. Stat. [1930] §5723) has treble objectives, viz., (1) to have the trust created in the indenture declared void as against the plaintiff as a creditor of the settlor, who is also a bene· ficiary under it, and the principal fund thereof, in so far as may be required for the purpose, subjected to the satisfaction of plaintiff's claim; in event that such relief may not be ex-

tended to it, then (2) that the court decree that the income from the trust estate be paid to the plaintiff—or in any event, (3) so much thereof as is not reasonably necessary for the comfortable support and maintenance of Tyson's wife and children—until the judgment is satisfied. The plaintiff alleges that the present value of the corpus of the trust is far in excess of the amount of plaintiff's claim and that the settlor's annual income from the trust and from other sources "exceeds by upwards of $5,000 the amount required for the comfortable support and maintenance of his wife and children" of which latter there are three living at this time, all of whom are minors and with the settlor's wife are parties to this action. To the complaint, two demurrers, identical in their subject matters, questioning the sufficiency of the allegations contained therein to warrant relief in any of the respects prayed for, are interposed—one by the defendant successor trustee in which the settlor, the latter's wife, Shirley N., and a son, James N. Tyson join; the other by the two other sons, viz., Charles D. and John H. Jr., Tyson.

Among the provisions of the indenture (aside from the usual ones authorizing the trustee to invest and reinvest the properties of which the corpus consists, collect the income therefrom, etc.) which may be noticed to show the plan of the trust described in it, are the following: The trustee is authorized to pay 40 per cent of the debts owing by the settlor's deceased father, whose estate is said to have been insufficient to satisfy his creditors, to be divided among them *pro rata*; in its discretion to purchase from the settlor's father's estate, the family homestead or an interest therein, provided that if it does so it may in its absolute discretion continue to hold same as part of the trust fund, "or convey it to the grantor (settlor) or his nominee free from the provisions" of the trust. In this connection, the trustee is directed to waive the payment of mortgages aggregating $85,000 on the homestead in question, to the extent of a one-third interest therein conveyed to the trustee by the settlor. The indenture also provides: "In the sole discretion of the trustee and during the lifetime of the grantor (settlor) only, the trustee may pay obligations of the grantor, when requested by the grantor so to do, out of the principal of the trust fund. After the death of the grantor (settlor) the trustee may in its absolute discretion pay any debts of the grantor (settlor) out of the

trust funds in its possession. Nothing herein contained shall be construed to give a right to the grantor (settlor) to have such obligations paid or to any creditor of the grantor (settlor) either before or after his death to demand such payment from the trustee."

The right is, also, conferred upon the trustee "in its absolute discretion, if it deem wise, to accumulate any part of the income, and to the settlor to amend and amplify any of the provisions, with the consent and approval of the trustee, but not in such manner as to change the provisions for the disposition of principal or income prior to his death." This latter privilege the settlor exercised on October 16, 1936, in respects of no moment to the present inquiry.

In so far as may apply to the payment of the income derived from the trust fund, the provisions of the indenture may be summarized as follows: During the period of 20 years next ensuing after the date of the indenture, or for so much of that period as the settlor shall continue to live, the trustee is "to pay the net income therefrom, or so much thereof as the trustee may in its absolute discretion deem wise, to the grantor (settlor) or to accumulate any part thereof, or to expend any part thereof directly for his support or for the support and maintenance of his wife, or for the support, education and maintenance of his son, Charles D. Tyson, or of other children if they be born to him"; if the settlor be living at the expiration of 10 years from the date of the indenture the trustee is to pay over to him one-half of the principal of the trust fund; if he survive until the end of 20 years from the date of the indenture the trustee is to deliver to the settlor all of the funds then in its possession, together with any accumulated income, whereupon the trust is to terminate. The indenture, also, contains specific provisions concerning the disposition of the corpus as this may be at the time of his death if the settlor shall decease at any time within 20 years from its date. These will be referred to later in connection with other grounds of demurrer.

The claim of law underlying the reasons of demurrer assigned is that under the allegations of the complaint the trust is valid as against the plaintiff judgment creditor of the settlor-beneficiary because it observes the conditions stated in

section 5723 of the General Statutes, Revision of 1930 (here-inafter referred to as "the statute") which appears in the footnote*; and hence, no cause of action is stated by reason of which either the income from or the principal fund of the trust may be subjected to the satisfaction of his claim.

The indenture does contain provisions which meet those prescribed in the statute, viz., in that it expressly provides that the income may at the discretion of the trustee be with-held from the beneficiaries and accumulated or be expended for the support of the settlor-beneficiary or for that of his wife, or for the support, education and maintenance of his children. *Reilly vs. State,* 119 Conn. 508, 511; *Bridgeport-City Trust Co. vs. Beach,* 119 id. 131, 141; *Cromwell vs. Converse,* 108 id. 412, 425; *Foley vs. Hastings,* 107 id. 9; *Carter vs. Brownell,* 95 id. 216, 223. In so far as that as-pect of the matter is concerned, therefore, the trust is not open to attack on the part of the beneficiary's creditors. However, the circumstance that this is so, does not dispose of the questions whether, nevertheless, the property of which the trust corpus consists and the income therefrom, or either, may not be made available to the satisfaction of plaintiff's claim.

The decisive question here, is not whether the trust is lack-ing in any of the conditions required by the statute, but whether the statute comprehends it at all, in view of the cir-cumstance that a beneficiary of the income from the trust fund is the settlor. Although counsel have treated the mat-ter as though the settlor were designated as solely entitled

* Sec. 5723. *Income of trust fund, to what extent liable to credi-tors. Expenses of trustee.* Whenever property shall have been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold such income, and the income shall not have been expressly given for the support of the beneficiary or his family, such income shall be liable in equity to the claims of all creditors of such beneficiary. Any creditor of such beneficiary may bring an action against him, and any court having jurisdiction may direct such trustees to pay over the net income derived from such trust estate to such creditor, as the same may accrue, until his debt shall be satisfied. When any such trust shall have been expressly provided to be for the support of the beneficiary or his family, a court of equity having jurisdiction may make such order regarding the surplus, if any, not required for the support of the beneficiary or his family, as justice and equity may require. The defendant trustee in any such action shall be entitled to charge in the administration account of such trust such expenses and disbursements as the court to which such action shall be brought shall determine to be reasonable and proper.

to the whole of such income for the period of 20 years (or so much thereof as he should continue to live), it is, of course, apparent under the provisions of the indenture, that the settlor's wife and children are also beneficiaries in that respect, since the trustee in his discretion may withhold the income from the settlor entirely and expend so much of it as he may deem proper for the support and maintenance of his wife or for the support, education and maintenance of his children. However, since the validity of the provisions authorizing payment of income to the settlor as a self-designated beneficiary are so inextricably intertwined with those empowering expenditures for his wife and children, it will probably conduce to clarity to treat the question for the present as have counsel in that respect.

Standing alone and considered without reference to the judicially declared law on the subject, the language in which the statute is couched might seem to afford some support, at first blush, for defendant's claim that the instant trust is within its comprehension. It reads: "Whenever property shall have been given to trustees to pay over the income to any person, etc." On analysis, however, it is discernible that it conceives: (1) a donor (in the phrase "whenever property shall have been given to trustees") and a donee (the recipient of the income) who out of the nature of a gift must necessarily be some one other than the donor. Again, the language is not adept to express a trust for the benefit of a settlor. For the words "any person" in the context in which they appear, are descriptive rather of another than the creator of a trust and must be taken to indicate someone other than the donor or settlor, while if it were intended that the statutory conditions were to be applicable to a settlor as a beneficiary of income within the meaning of the term in question, as well as someone other than him, it may be apprehended that the statute would have been phrased in language apt to express such an intent, by the inclusion of phrase recognizing the distinction.

Quite apart from the verbiage in which the statute is expressed, additional light is thrown upon the intention of the statute by considering its purpose as that has been judicially defined, against the backdrop of the substantive law relating to its subject matter. The purpose of the original act (Public

Acts of 1899, chap. 210) was identified in *Carter vs. Brownell, supra,* p. 223, as declaratory of the law of this State relating to so-called spendthrift trusts, "but carried it far beyond" what had been judicially pronounced up to that time and specifically attached "certain definite conditions to all such trusts, whose presence should mark their validity, and whose absence should disclose their invalidity." All of the instances involving attempts to create trusts and to shield the income provided for in them from the creditors of the beneficiary upon which the Supreme Court of Errors had passed before the enactment of the statute were testamentary and of the conventional species, i.e., where the testator, as obviously he had to do in a trust of that character, named a third person as the beneficiary of the income. *Huntington vs. Jones,* 72 Conn. 45, 46; *St. John vs. Dann,* 66 id. 401, 403; *Tolland County Ins. Co. vs. Underwood,* 50 id. 493, 494; *Clement's Appeal from Probate,* 49 id. 519; *Smith vs. Wildman,* 37 id. 384; *Easterly vs. Keney,* 36 id. 18; *Farmers' & Mechanics' Savings Bank vs. Brewer,* 27 id. 600; *Johnson vs. Connecticut Bank,* 21 id. 148, 149; *Leavitt vs. Beirne,* 21 id. 1. There had been no case presented of a trust *inter vivos* making the payment of income discretionary with the trustee, or for support and maintenance or restricting the right of the beneficiary to alienate such income and, hence, none where the settlor of such a trust had named himself as a *cestui que trust.* Consequently, while the statute applies to trusts *inter vivos* as well as those created by will, yet in so far as it codifies the law as this had been judicially defined or intimated prior to its enactment, it is necessarily limited in its application to trusts in which the settlor or creator and the beneficiary of the income were different persons, since it was with trusts of that character only that the court had dealt. The statute could not constitute an expression of the judicially declared status of so-called spendthrift trusts where the settlor and the beneficiary of income from the settlor's property were the same individual because there had never been any occasion for the Supreme Court of Errors to make a pronouncement on that subject—nor has there been since then.

Regardless of all that, this much is certain from the content of the statute, its history and what is said of its design in *Carter vs. Brownell, supra,* pp. 222, 223: that it is concerned

only with defining the conditions in the presence of which so-called spendthrift trusts are valid as against creditors of a beneficiary. To hold, however, that the statute's favor extends to trusts in which the settlor is a beneficiary of income would produce a legal paradox in that it would permit a person to avoid his creditors by imposing upon himself restraints in the use and enjoyment of his own property. In this it would attribute to the statute a purpose to sanction a departure from a fundamental rule of law, viz., that one who is entitled to the use, enjoyment and benefits of property and has the control and the power of disposition of it, is in actuality the owner of it, though the naked legal title be in another, and he must discharge the obligations arising from such ownership to his creditors in the same manner and to the same extent as though the legal title were in himself. Such a design is of radically different character than that defined in *Carter vs. Brownell, supra,* p. 223, and foreign to it. Obviously if the settlor here had conveyed his property to another, reserving to himself an estate for life or for years in it, or had transferred it to a trustee with direction to pay him the income therefrom while he might live or for a definite period with remainder to others or retention of power in himself to direct its disposition upon his death, his absolute equitable life estate in the income would be liable to be taken for the satisfaction of his debts. *Huntington vs. Jones,* 72 Conn. 45, 50; *Easterly vs. Keney,* 36 id. 18, 22; *Farmers' & Mechanics' Savings Bank vs. Brewer,* 27 id. 600, 605; *Johnson vs. Connecticut Bank,* 21 id. 148, 158. It would introduce a new and radical doctrine into the law, if one were to be permitted to avoid this consequence, by so transparent a device as that of authorizing a trustee to whom he conveys his estate, with the direction to pay him the income for life, and to expend it for his support or for that of his wife or for the support, maintenance and education of his children, by merely providing that the trustee might withhold such payments of income or make such expenditures himself, at his own absolute discretion.

"One cannot create a spendthrift trust in property for his own benefit, nor by any other device exclude creditors while retaining the beneficial interest and the incidents of ownership and control, as, for example, by settling it in trust for

himself for life, free from his debts and obligations, with remainder to the use of his appointees by will, and, in default of such appointment, to the use of his heirs." *C. I. T. Corp. vs. Flint,* 333 Pa. 350, 353, 5 Atl. (2d) 126, and cases cited in the opinion. The case quoted from is authority for the proposition that a trust in which the settlor is to receive the income for life is not a spendthrift trust regardless of what provisions it may contain to sequester it from the beneficiary's creditors, and its holding is equally applicable to so-called spendthrift trusts as these have been treated as defined under our statute and generally. *See* cases collected in an annotation in 119 A.L.R. 19, 35-37; *and see,* 1 *Restatement, Trusts,* §156(1).

Yet another consideration which repels the construction of the statute for which defendants contend is inherent in the nature of spendthrift trusts. It is recognized that the unadorned purpose of trusts of this type is to place the income for which they may provide beyond the reach of the creditors of the beneficiary. *Cromwell vs. Converse, supra,* p. 425. The justification for the sanction conferred upon such dispositions, however, in those jurisdictions which have adopted the American rule, arises out of no concern for the beneficiary, nor do provisions of such character invest him with any rights which he would not possess without them. They are concerned only with the right of a creator or settlor of such a trust to dispose of his own property as he sees fit so long as he violates no rule of law in so doing. And the only question ever, or which can be presented, in such instances, is the validity of such restraints viewed from the standpoint of the right of the creator or settlor to impose them. *Huestis vs. Manley,* 110 Vt. 413, 8 Atl. (2d) 644, 646, and cases collected in an annotation in 119 A.L.R. 19, 28-30. The statute defines how far the settlor or creator of a trust may go in this direction in this State by specifically enumerating what restraints he may place upon income derived from a trust established by him and by necessary implication excludes all others. *Carter vs. Brownell, supra,* p. 223. The subject matter with which it deals is concerned with provisions for the income from one's property for the use of another—not the income from one's property for his own use. *See Schenck vs. Barnes,* 156 N.Y. 316, 50 N.E. 967, 968; *Sternberger vs.*

*Glenn,* 175 Tenn. 644, 137 S.W. (2d) 269, 271. The conclusion is that the trust described in the complaint is not one within the contemplation of the statute in so far as it provides for payment of income to or the expenditure of same for the support and maintenance of the settlor.

In this connection it is to be observed that the income is not required to be paid to the settlor in the discretion of the trustee *solely,* but to him, "or for the support and maintenance of his wife, or for the support, education and maintenance of his son, Charles D. Tyson, or of other children, if they be born to him." Where the beneficiary is a third party and the income of a trust fund is to be paid him together with another or others, and the provisions are such that it is impossible to separate one from the other, it cannot be subjected to the satisfaction of the debts of either. *St. John vs. Dann,* 66 Conn. 401, 406; *Tolland County Ins. Co. vs. Underwood,* 50 id. 493, 496. The rule is well established "that where a trust is for several purposes, some valid and some invalid, it will be supported so far as it is good, provided such part is separable from the rest and no violence will thereby be done to the testator's general intent." *Bristol vs. Bristol,* 53 Conn. 242, 257. *See, also, Andrews vs. Rice,* 53 id. 566, 575, 576. Where, however, the valid and invalid parts are so blended and intertwined in one scheme that one is not enforceable, according to the intent of the creator of the trust, without the other, the entire provision falls. 65 *C.J. Trusts,* §96; *Bristol vs. Bristol, supra,* p. 257; *Andrews vs. Rice, supra,* p. 576; *Coit vs. Comstock,* 51 Conn. 352, 386. Had the settlor provided that a certain portion of the income should be paid absolutely to his wife for her support or for the support, maintenance and education of his children, it might well be that a different question would be presented. But since all payments of income, even of those for support and maintenance as well as for the education of his children, are wholly discretionary with the trustee, and the court cannot control the exercise of such discretion (in the absence of a showing of bad faith), it is impossible to determine what part of the income will, at any time, be paid to the settlor-beneficiary and what expended for the support and maintenance of the wife or the support, maintenance and education of the children. The provisions of the trust here with respect to the payment of income are so intertwined that the

invalidity of that part which refers to the payments to be made at the trustee's discretion to the settlor-beneficiary cannot be separated from that which relates to the discretionary expenditures which the trustee is authorized to make for the settlor's wife and children, without destroying the plan sought to be effectuated by the settlor in creating the trust. In consequence, the entire provision for the payment or expenditure of the income is invalid as against the plaintiff judgment creditor of the settlor-beneficiary, and by force of the provisions of the statute may be subjected to the satisfaction of plaintiff's claim.

In view of this conclusion, no discussion of that part of defendant's demurrer contained in subparagraphs 2, 3 and 4 of paragraph 1-b thereof, is warranted. Paragraph 1-a is not specific and bad for that reason. Paragraph 1-c is considered following paragraph 2.

Paragraph 2 of the demurrer is based on the assumption that the complaint alleges that the income from the trust fund when combined with that of the settlor from other sources, exceeds what is necessary to provide comfortable support for the settlor and his family. The complaint does not contain such an allegation but merely one (paragraph 12) to the effect that the annual income from the trust fund, together with the settlor's income from other sources, exceeds by upwards of $5,000 the amount required for the comfortable support and maintenance of the *wife* and *children* of defendant settlor. It omits any reference to the settlor; hence, the demurrer predicates on a premise not existent in the factual allegation of the complaint. However, it may be noted that if the trust were an unvarnished one for the support of the settlor-beneficiary, it would not prevent the plaintiff judgment creditor from having the benefit of the income for the satisfaction of his claim. "Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit." 1 *Restatement, Trusts* §156 (2). And, were the trust one expressly for the support of a third-party beneficiary and his family, the court would be authorized to "make such order regarding the surplus, if any, not required for [such] support." (Gen. Stat. [1930] §5723.)

Paragraph 1(c) of the demurrer, in effect, advances the contention that, in any event, the corpus of the trust cannot be reached by the plaintiff judgment creditor and subjected to the satisfaction of plaintiff's claim for two reasons, viz., that the trust fund "(1) ....is vested in the third-party remaindermen designated in the trust subject only to be divested on November 12, 1941 and November 12, 1951, if the settlor is then living and (2) any depletion of said corpus would reduce the income therefrom which, in effect, would destroy the protection of the beneficiaries under Sec. 5723." If the conclusion reached *supra* (viz., that the entire income from the trust fund is applicable to the liquidation of plaintiff's claim) is sound, it follows, of course, that the second of the quoted grounds of demurrer must be and is, overruled.

As to "(1)", this obviously premises on the assumption that the interests of the remaindermen named in the indenture are vested. Without reciting in detail the provisions out of which such interests as the remaindermen have arise, they may be summarized as follows: The trust, in any event, is to terminate at the expiration of 20 years from its effective date of creation. If the settlor survives for the period of ten years from such date, one-half in value of the trust corpus is to be paid over to him; if he lives until the end of the second ten years, the remainder of the principal fund of the trust is to be delivered to him. All of the provisions concerning the disposition of the trust corpus other than these are wholly contingent upon the circumstance that the settlor decease before the trust so terminates according to the provisions mentioned. The destination of such property as may be in the possession of the trustee at the time of the settlor's death, if the latter occurs before the 20 year period has elapsed, and the respective estates and interests of the remaindermen are, in turn, subject to certain contingencies expressed in the scheme of disposition. This is adapted to three different situations, any of which the settlor conceives may obtain and for each of which he has sought to provide, viz., if when he dies: (A) his widow and children survive him; (B) his widow, but no children survive him and (C) his children, but no widow survive him. In the situation conceived in "(A)" the income from one-half of the trust corpus as it is at the time of his demise is to be paid to his widow while she lives

but to cease upon her remarriage if that occur; the income from the other half, augmented by that from the widow's upon the latter's death or remarriage, is to be paid to the surviving children in equal shares, but as each reaches the age of 21 years, one-half of the principal sum upon which he is entitled to the income is to be paid him and the remaining half when he attains the age of 40 years; in the event of the conditions described in "(B)" existing, the entire income from the trust fund is to be paid to the settlor's widow while she lives, but is to cease if and when she remarries, and upon her death or remarriage, whichever occurs first, the trust fund is to be distributed as the settlor may direct by will, and if no such direction be so given, then is to be distributed to the settlor's heirs at law; in case the conditions described in "(C)" obtain, each of the surviving children, or the issue of any which have deceased, or shall thereafter do so, is to have an equal part of the income from the entire trust principal with the same provision as noted in "(B)" concerning the payment of such part of the principal as he shall receive the income from.

Defendants take it for granted that the interests of each of the remaindermen under this arrangement are vested but subject to being divested upon the occurrence of certain of the contingencies named. The question occurs whether this is so, or whether the vesting of such interests are contingent upon the prior happening of the occasions mentioned. A rule which will assist in determining this question, "is that if a future event or time is involved, the nature of the interest depends upon whether such future event or time concerns the gift itself or merely the payment of it; when futurity is annexed to the substance of the gift, the vesting is postponed, but if annexed to the time of payment only, the legacy vests immediately.... 'If the time of payment merely be postponed, and it appear to be the intention of the testator that his bounty should immediately attach, the legacy is of the vested kind; but if the time be annexed to the substance of the gift, as a condition precedent, it is contingent.' " *First National Bank vs. Somers*, 106 Conn. 267, 273.

The arrangement made by the settlor in the indenture, as outlined *supra*, cannot be effective unless the settlor die within the period of 20 years next following the date of that writing.

This is a condition precedent to the operation of the scheme of disposition described. The situation resulting is no different than if the settlor had made a will to the same effect, the mere execution of which could, of course, confer no right upon the persons beneficially named in it unless and until the testator deceased leaving such testament's provisions unchanged. That this is the intention which must be extracted from the provisions of the indenture is confirmed by the content of paragraph 9 in which it is stated that the settlor "with the consent and approval of the trustee, may amend or amplify this trust indenture but not in such manner as to change the provisions for the disposition of principal and/or income prior to his death"—which means that he might give completely different directions than those presently contained in the indenture at any time before his demise within the 20 year period. The conclusion is that none of the remaindermen's interests are presently vested, a fact as to which the signatories to the indenture apparently had well-grounded apprehensions as witness the provisions of paragraph 2-d thereof in which it is provided: "If at said date (that of the termination of the trust) any estate in any part of said trust fund shall not have vested by virtue of the other provisions of this instrument, said estate shall on that date vest an absolute right to immediate possession and ownership in the person or persons then enjoying the beneficial interests therein in the proportions of such beneficial interests."

Apparently the defendants' contention in urging that the trust estate will not be made available to satisfy the claim of the plaintiff judgment creditor on the premise that it is presently vested in the remaindermen named therein, is that the fact that it is so vested renders it immune to appropriation for that purpose. In view of the conclusion stated *supra* (viz., that none of the remainder interests are presently vested) the question becomes academic here. *But see Anno.*, 93 A.L.R. 1211.

In so far as this ground of demurrer purports to invoke the statutes it is overruled since the statute palpably applies only to the income derived from a trust and makes no provision applicable to trust principal.

The demurrers are overruled on all grounds.