Billings's Appeal from Probate.

### HENRY E. BILLINGS'S APPEAL FROM PROBATE.

A testator made a will, giving sundry pecuniary legacies to relatives who were his heirs at law. A few months later he gave to each of the legatees the amount of the legacy, and took from each a receipt for the same in full of all his rights under the will, with an agreement by which each bound himself and his heirs not to take any proceedings to set aside any will that he should leave. One of these legatees died before the testator, leaving a son, who after the death of the testator took an appeal from the probate of his will. Held that he was not estopped from taking the appeal by the agreement of his mother.

The ground upon which it was sought to set the will aside was unsoundness of mind in the testator. In proof of his sanity the appellees offered in evidence a series of annual accounts, kept by a person whom he employed to manage his property, running from a time ten years before the making of the will to that of his death thirteen years after it was made, showing in detail all investments and all receipts and payments, and which were submitted to the testator's examination. These accounts the counsel for the appellees proposed to read to the jury, for the purpose of showing the minute and intelligent attention which the testator gave to his affairs. The counsel for the appellant offered to admit that the accounts were correct, and the court ordered that they be laid in unread, for the jury to examine if they desired, except so far as the counsel desired to call their attention to any particular item or items. Held to be error, since the object of the appellees could not be effected without laying the accounts before the jury in all their details and connection, and the question was not at all whether the items were correct.

The particular unsoundness of mind that was claimed was that of a belief on the part of the testator in communications from spirits in the other world, and that he had been directed by them as to the disposition of his property. By his will he gave about half his property to the town of *S,* where he lived, for a fund to be named after him, half the interest of which was to be used for the poor of the town who were not town paupers, and the other half to be paid over to a society of spiritualists in the town, with a provision that if the town did not accept the legacy the whole should go to the spiritualist society. Held—

1. That evidence was not admissible on the part of the contestants of the will that the spiritualist society had become reduced to a very few persons and did not keep up its meetings. So long as the society was not extinct its feeble condition or insignificance was no ground for impeaching the will.

2. That evidence was not admissible on the part of the contestants that the town of *S* had voted to refuse to accept the legacy. The action of the town could not have any bearing on the validity of the will.

APPEAL from a decree of probate approving the will of

Calvin Hall; taken to the Superior Court in Tolland County, and tried to the jury before *Martin, J.* Verdict for the appellant, and motion for a new trial by the appellees for error in the rulings and charge of the court. The case is sufficiently stated in the opinion.

*J. L. Hunter* and *B. H. Bill*, in support of the motion.

*A. P. Hyde* and *M. R. West*, contra.

PARK, C. J. This is an appeal from a probate decree approving the will of one Calvin Hall. The jury in the Superior Court rendered a verdict against the validity of the will, and the appellees have moved for a new trial for error in the rulings and charge of the court.

The will was made in the year 1866, at which time the testator was eighty years of age. His wife had died several years before, and he had no children. At the time of the execution of the will his property amounted to from $20,000 to $25,000. By the will he gave ten thousand dollars to seven near relatives who were his heirs at law. A few months after he made a gift to each one of them of the amount of the legacy or its equivalent, and made a codicil revoking the legacies. At the time of making these gifts he took from each a receipt in full of all claims under the will, with an agreement binding each one, for himself and his heirs, not to interfere with the settlement of the estate or attempt to invalidate his will. One of these relatives was Martha A. Billings, the mother of the appellant. She died before the testator. The appellees claimed that the appellant, as her heir, and taking his interest through her, was estopped from asserting his rights as heir at law of the testator in attempting to set aside the will. The court ruled against this claim.

This ruling was clearly correct. The appellant was heir at law of the testator in his own right, not as heir of his mother. She had died before the testator and had ceased to be an intermediary between them, leaving him to take

directly and in his own right from the testator.   There is, at first view, some plausibility in the claim that the appellant, being heir of his mother, is estopped as privy in estate by that which would estop her; but such an estoppel affects the heir only as privy in estate and as a condition impressed upon the estate which passes to him as heir.   But it is not found that the property received by the mother from Mr. Hall passed to him.   She may have expended it in her life time, or disposed of it to some one else by gift or will.   If the appellant is estopped at all it must be wholly by reason of the mere contract of his mother, and such a contract affects no one but the maker.   A contract that neither she nor her heirs should dispute the will would still be only her contract and create no obligation or liability on the part of her heirs.   Mr. Hall could have made the gift to the mother conditional on the acquiescence of herself and her heirs in his will, but could not have got from her in any way, by mere contract, an obligation that would be binding personally upon her heirs as well as herself, and she could not impress upon the share of the estate of the testator which would have come to her as his heir, any character or condition that would affect it when it came to her heirs.   She had no interest in that property before her death, and as she died before the testator she never had any interest in it at all.   So that when the appellant is asserting the rights of an heir, he is asserting no right of hers, but one wholly his own, not received through her and over which she had no control.

The ground upon which the appellant sought to set the will aside was that of an insane delusion operating upon the mind of the testator at the time he made his will, and rendering him incompetent.   For the purpose of showing the entire sanity of the testator at this time, especially as evidenced by his intelligence with regard to his own affairs and the details of his property and its management, the appellees introduced the evidence of Dr. Hamilton, who testified that about the year 1855 the testator requested him to take charge of and manage his property for him; that he

consented to do so; that the testator thereupon delivered to him all his personal property, consisting mostly of notes and bonds of which there was a large number; that he continued to have charge of the property, collecting and re-investing the principal and collecting and paying over to the testator the income, from 1855 down to his death in 1879·; that he drew his will for him in 1866, and the codicil soon after; that he annually rendered an account for the testator's examination, giving the name of the maker of each note and its amount, and stating the collections and investments during the whole period; and that he had these accounts in court. The appellees' counsel then requested the witness to read the accounts, for the purpose of showing the careful and intelligent attention which the testator gave to minute details with regard to his business affairs; but the court, upon the objection of the appellant's counsel, who offered to admit the correctness of the accounts, refused to allow them to be read to the jury, but required them to be laid in unread, except so far as the appellees' counsel might wish to call their attention to or inquire of the witness as to any particular item or items of the account. We think the court erred in this ruling. The question was not at all whether the accounts were correct. Nor was it a question of any particular item or items. The object of laying the accounts before the jury was to show how minute they were in details, and how presumably sane the mind of the testator must have been when he went over thus minutely the particulars of his property and of its manage-ment, and kept himself so well informed with regard to his business affairs. It was the right of the appellees that this evidence in all its details and connection should be brought to the attention of the jury.; and we think it may have failed to produce its proper impression on their minds when, under the order of the court, it was simply laid in in a mass, and left for them to examine or not as they should feel inclined.

The will in question gave $10,000 to the relatives before mentioned, $500 in another legacy, and the rest of the

estate to the town of Somers in trust to be kept as a fund to be known as the Hall Benevolent Fund, to be loaned on bond and mortgage, and the annual interest to be applied, one half for the benefit of the poor of the town who were not town paupers, and the other half "to be paid over to a society or association for religious purposes which is or shall be legally formed in said town, whose religious faith or tenets shall in the main correspond with the views or belief of the so-called Modern Spiritualists, to be expended by said society in the advancement of spiritualism by paying lecturers or teachers of said religious faith in said town." After some directions with regard to the care of the fund, the will then provided that if the town should refuse to accept the trust the whole fund should go to the spiritualist society, in which case half the interest was to be expended annually in paying a travelling agent who should lecture upon the subject of spiritualism in different parts of the state. The town of Somers at a regular town meeting voted not to accept the bequest. This fact was allowed to be proved before the jury. It is very clear that this evidence was wholly inadmissible. The action of the town on the subject could have nothing to do with the validity of the will. The only possible effect of the evidence upon the minds of the jurors must have been to create a prejudice against the will, the vote of the town being in itself an expression of disrespect towards it. The admission of the evidence would be in itself a sufficient ground for granting a new trial were it not that the appellees themselves first brought the matter in by inquiring whether there had not been such a vote. The appellant afterwards offered a duly authenticated copy from the records of the town, showing what the vote was. The appellees objected to this evidence; but the objection seems to have been made only to the copy of the record, while if the fact of the vote was admissible at all, (and it had already been admitted upon the parol testimony of the appellees,) it is clear that it was provable by the only legal evidence, a copy of the record. We think in the circumstances the appellees are not enti-

tled to a new trial for the manifestly improper admission of evidence as to the action of the town.

But there is another ruling of the court which we think is clearly erroneous. It appears from the evidence that a society called the "Somers Association of Spiritualists" had been formed before the testator's death, and of which he was a member. One Joseph Hollister, who had testified for the appellees, was asked on cross-examination whether he was a member of this association, to which he replied that he was. He was then asked in successive questions how many members of the association were then living in Somers; if he was a member of the committee of the association; of how many the committee was composed and whether there were more than seven; if the committee did not compose the whole association; and whether there had been any meeting in the church for seven years prior to the death of the testator. To each of these questions as they were asked, the appellees objected, but the court admitted them. The court clearly erred in this ruling. The object of the several inquiries was to throw contempt upon the association, as something unworthy of the legacy and not deserving the favorable consideration of the jury. It may have been all this, and yet it would have no bearing on the question of the validity of the will. If the testator chose to give his property to precisely such an association, he had a perfect right to do so. If a society or corporation to which a legacy is given has ceased to exist at the time of the testator's death, the legacy of course must lapse, but no such result follows from the mere feebleness of such a society or corporation, nor from its unworthiness, so long as the gift is not for an object that the policy of the law would condemn.

A new trial is advised.

In this opinion the other judges concurred.