# Hagy & Bittner *v.* Poike, Appellant. Slimmons's Appeal.

*Execution—Issue on question of distribution—Dispute—Fraud—Evidence—Acts of June 16, 1836, and April 20, 1846.*

Under the acts of June 16, 1836, P. L. 777, and April 20, 1846, P. L. 411, regulating the granting of issues " where there shall be disputes concerning the distribution of money " arising from sales upon execution, an issue should not be granted on evidence so slight and insufficient that in case a verdict should be rendered thereon in favor of the petitioner the trial judge would be bound to set it aside.

In such a case testimony merely tending to prove circumstances of suspicion is insufficient. Alleged fraud must be established either by direct proof, or by clearly proved facts sufficient to warrant a presumption of its existence. It is not enough to charge fraud and prove, in support thereof, slight circumstances of suspicion only.

Argued March 5, 1894. Appeal, No. 24, Jan. T., 1894, by R. Slimmons & Co., et al., from order of C. P. Northampton Co., Feb. T., 1893, No. 24, refusing issue in Hagy & Bittner v. Poike. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to show cause why issue should not be granted to determine disputed facts concerning distribution of money arising from sheriff's sale of personal property.

The petition for the rule alleged that the petitioners, R. Slim-

mons & Co., and Hugh O'Donnell, were judgment creditors of Frederick A. Poike, and that they had issued execution upon their judgments ; that, prior to the issuance of their writs, Poike had confessed two judgments, one in favor of Hagy & Bittner, the appellees, for the amount of $1,507.03, and the other in favor of Solomon Tannhauser for the amount of $187.56; that execution was issued upon both these confessed judgments and the personal property of the said Poike was levied upon and sold by the sheriff.

The petitioners further represented that there were material facts in dispute between them and the other alleged judgment creditor, Hagy & Bittner, arising from the said sale by the sheriff of the personal property of the said Poike under the execution of the said confessed judgment of Hagy & Bittner. That at the time of the confession of this judgment, the said Poike was indebted to a large number of creditors, among them the petitioners, to an amount largely in excess of the value of his property, and that he did not have the means to pay the said judgment and his other creditors. That the judgment confessed by the said Poike to the said Hagy & Bittner was fraudulent, collusive and without consideration. That the said Poike was insolvent during the time that the alleged indebtedness of Hagy & Bittner was created, and that by means of said confession of judgment the title to the said personal property of the said Poike was transferred to the said Hagy & Bittner, and by them to the said Poike with intent to defraud the petitioners. .

The following opinion was filed by SCHUYLER, P. J.:

" This is a petition for an issue under act of June 16, 1836, § 87, P. L. 777, Purd. 763, as modified by act of April 20, 1846, § 2, P. L. 411, Purd. 764, regulating the granting of issues ' where there shall be disputes concerning the distribution of money arising ' from sales upon execution. The controversy is over the plaintiff's execution, the petition containing an allegation that the judgment on which that execution was issued is ' fraudulent, collusive and without consideration.' The question is whether the evidence in support of this allegation creates a ' dispute ' within the meaning of the above mentioned acts of assembly.

" It is conceded that the amount of the judgment in controversy (it was a confessed judgment) was made up as follows:

Bill of Hagy & Trexler, $227.69 ; bill of Hagy & Bittner, the plaintiffs in the judgment, $778.35 ; and two notes aggregating $500 in favor of D. R. Hagy, who was a member of both of the firms just mentioned. If these three items represented honest claims, there is nothing in the policy of the law that would prevent their being included in one judgment by agreement of the parties, even though the claims were held in different rights. As a scheme to prevent the multiplication of costs, such a course would be commendable, in the absence of any evidence of a fraudulent purpose, of which there is none here. The confession of judgment was secured by Mr. Hagy, who rightfully represented all the claims included in the judgment. If he and Poike were engaged in a conspiracy to defraud the latter's creditors in the way indicated, it would most likely have manifested itself in the taking of additional judgments to cover the claim of Hagy & Trexler and Hagy's individual claim, but that was not done.

" Thus far, therefore, we find nothing that casts the slightest suspicion on the integrity of the judgment. Were then the three items, which went to make up the amount of the judgment, honest claims ? In other words, was the judgment based upon a full and valuable consideration ? Both Hagy and Poike, the only witnesses examined on the subject, so testify most emphatically. Against this testimony the petitioners have adduced nothing tangible. That Hagy & Bittner bought in the property, a stock of store goods, at the sheriff's sale, and left it in the possession of Poike, who is continuing the business as their agent, is an every-day occurrence, without the slightest taint of fraud. Nor can we see what we have to do with the fact that Hagy & Bittner have never settled with a man by the name of Tannhauser, a co-execution creditor, for his share of the proceeds of sale.

" Much stress is laid by the petitioners on alleged contradictions in the testimony of Mr. Hagy, and on his failure to produce certain books of account in answer to a subpœna duces tecum. Without going into details we think the failure to produce the books is satisfactorily explained. As to the contradictions in Mr. Hagy's testimony, they are as to matters which we consider wholly immaterial, that is to say, whether the book account of Hagy & Trexler and his own two notes had been as-

signed to Hagy & Bittner.  But concede that the matter is material, the utmost effect of the contradictions (and the same would be true of the failure to produce the books even if unexplained), would be to throw discredit on Mr. Hagy's testimony, which would leave Poike's testimony and the prima facies of the judgment untouched.

"The only remaining point made by the petitioners relates to the two notes in favor of Mr. Hagy, being for $200 and $300 respectively.  Both Mr. Hagy and Mr. Poike testify that these notes were given for money loaned.  It cannot be denied that the testimony returned by the examiner, as to the pecuniary circumstances of the parties to the note, excites some doubt as to the truth of this statement.  But is this testimony relevant? We think not, on the authority of Hartman v. Shaffer, 71 Pa. 315, where it is held that 'without some evidence to cast suspicion on a transaction, the pecuniary circumstances of the respective parties, and their relations to each other, would be irrelevant and calculated to mislead the jury.'  With this testimony eliminated, there is nothing left upon which to frame an issue, and the present petition must therefore be denied.

"We are not unmindful of the 'familiar bundle of twigs,' but here we think there are no twigs with which to make a bundle.  Nor have we overlooked the fact that fraud can rarely be proved by direct and positive testimony, and that great liberality is allowed in the introduction of evidence to show it. But when the evidence is all in, there is always a duty resting with the court to decide whether the evidence is sufficient to be submitted to the jury from which to find fraud.  It is frequently a delicate, difficult and responsible duty, but there is no escape from it.  A similar duty confronts the court now, and believing as we do that the evidence now before us, which it is fair to presume is the best attainable, is insufficient to justify a jury in finding that the judgment in controversy is fraudulent, it would be folly to direct an issue to try that fact."

"August 21, 1893, petition dismissed and issue refused."

*Error assigned* was above order.

*W. C. Shipman* and *M. Kirkpatrick*, for appellants, cited: O'Donnell v. Poike, 3 Northampton Co. R. 377; Reinhard v,

Keenbartz, 6 Watts, 93 ; Kauffman v. Swar, 5 Pa. 230 ; Stevenson v. Stewart, 11 Pa. 307 ; Montgomery Web Co. v. Dienelt, 133 Pa. 585 ; Rodman v. Thalheimer, 75 Pa. 232 ; Bughman v. Bank, 159 Pa. 94 ; Palmer v. Gilmore, 148 Pa. 48 ; Bunn v. Ahl, 29 Pa. 387 ; Sullivan v. Tinker, 140 Pa. 35.

*Orrin Serfass*, for appellees, cited : Moore v. Dunn, 147 Pa. 368 ; Morton v. Weaver, 99 Pa. 47 ; Mead v. Conroe, 113 Pa. 220 ; Jones v. Lewis, 148 Pa. 234 ; Lewis v. Rogers, 16 Pa. 18 ; Bank's Ap., 85 Pa. 528 ; Thompson's Ap., 57 Pa. 175.

PER CURIAM, March 26, 1894 :

We have carefully considered the evidence bearing on the questions involved in the several specifications in this case, and are not convinced that the learned judge erred in refusing the issue prayed for by appellants.   While there is some testimony tending to prove circumstances of suspicion, there is not sufficient evidence of the alleged fraudulent acts to warrant the court in sending an issue to a jury.   Alleged fraud must be established either by direct proof, or by clearly proved facts sufficient to warrant a presumption of its existence.   It is not enough to charge fraud and prove, in support thereof, slight circumstances of suspicion only : Jones v. Lewis, 148 Pa. 234. To the same effect are Mead v. Conroe, 113 Pa. 220, and Morton v. Weaver, 99 Pa. 47.   As a general rule an issue should never be awarded on evidence so slight and insufficient that, in case a verdict should be rendered thereon in favor of the petitioner, the trial judge would be bound to set it aside.   We cannot therefore say there was error in dismissing the petition.

Decree affirmed and appeal dismissed with costs to be paid by Slimmons & Co. et al., appellants.