THE LYME HIGH SCHOOL ASSOCIATION *vs.* BENJAMIN W. ALLING, ATTORNEY-GENERAL, ET AL.

* First Judicial District, Hartford, March Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

* Transferred from the Second Judicial District.

Argued March 4th—decided April 16th, 1931

*Rollin U. Tyler,* for the plaintiff.

*L. Horatio Biglow, Jr.,* for the defendant Town of Old Lyme.

*Bernard A. Kosicki,* for the defendant Attorney-General.

MALTBIE, C. J.   Evelyn MacCurdy Salisbury died in 1917 leaving a lengthy will and a codicil, the relevant portions of which are quoted in the footnote.

---

"ARTICLE THIRD.

"Whereas it was my husband's wish that I should bequeath for public purposes in Old Lyme the greater part of the proceeds from the sale of the house and property 237 Church Street, New Haven, which he deeded to me in his lifetime, I direct my executors to pay to the Lyme High School Association from the avails of the sale of this property the ten thousand dollars ($10,000) which I owe for the Salisbury Place, also to pay the sum of twenty-five hundred dollars ($2500) due on a note from me to Richard Aldrich McCurdy which he returned to me, and which I gave to the Lyme High School Association.

"I request the Lyme High School Association to accept and hold the twelve thousand five hundred dollars ($12,500) received in the above named payments, together with any other money or property which comes from my estate to the Lyme High School Association, as a permanent Fund, to be known as 'The MacCurdy-Salisbury Fund.' One third of the annual income of said Fund

The plaintiff, named in several places in the will and codicil as a beneficiary, is a corporation without capital

shall be added to the principal for ninety-nine years, or as long as the law allows. Of this Fund the sum of twelve thousand five hundred dollars ($12,500) shall be set aside, subject to the foregoing conditions as to increase of principal, the available income of which shall be used for increasing the salary of the teachers in the Old Lyme Graded School, especially that of the principal who should be a person of high character, standing and education, to the end that the instruction so far as it goes may be as good as in any school of its kind in the State, as it is my purpose not to compete with the curricula of the excellent schools at Clinton and New London which are open to Lyme Students, but to give the latter an education that will fit them to enter the higher grades of said schools, provided however that not more than four thousand dollars ($4000) from said income shall ever be paid in any year toward the salary of said principal, and that the salaries of said other teachers be limited in proportion.

"All my bequests to said Association herein contained are made on condition that the Association grant my aforesaid requests, and also on condition that no part of the income of said Fund shall be voted in any year for educational purposes in a building owned or occupied by the town, unless said town should first have appropriated for teachers salaries in the schools of the town at least as much for said year as it now appropriates yearly for said salaries."

"ARTICLE SEVENTH.
[After a gift to Yale University.]

"In case Yale University should not accept said sum under the above conditions, I direct my executors and trustees to hold and manage said sum as a Trust Fund for the benefit of said George Grant MacCurdy, the whole annual income of which shall be for his personal use during his lifetime. Upon the decease of the said George Grant MacCurdy, said Trust Fund shall be disposed of as follows:
* * * * * *

"2. Ten thousand dollars ($10,000) shall be added to the permanent Fund bequeathed by me to the Lyme High School Association."
* * * * * *

"ARTICLE SIXTEENTH.
* * * * * *
[As altered by the Codicil.]

"My said residuary estate shall be held in trust during the lifetime of George Grant MacCurdy, one half of the net income, after allowing for reasonable expenses incident to the proper care of said

stock organized in 1893 for these purposes: "The purpose for which such Association is constituted is to establish and maintain a School of high grade in said Old Lyme, to contract or agree with any other educational institution or town for the purpose of establishing or maintaining said School, to receive and hold grants, devises and gifts of real and personal property for educational purposes, and generally to do all things incidental to said business." The testatrix and her husband were among the original incorporators. Since her death the Association has received the $12,500 referred to in the Third Article of the will and also income to a considerable amount under the codicil. It

residuary estate, shall be paid annually to the Lyme High School Association during the lifetime of said George Grant MacCurdy; one half of said net income shall be added annually to the permanent MacCurdy-Salisbury Fund hereinbefore created by me for the Ladies' Library Association of Old Lyme during the lifetime of said George Grant MacCurdy. Beginning one year after my decease, the whole of this half of said net income may be set aside annually for a period of years by my Executors and Trustees as a building fund; provided the said Ladies' Library Association shall raise at least as much during the same time and for the same purpose; namely; the construction of a fireproof building for Library and Gallery or other purposes, to be connected with or near to the present Library building; and on condition that my genealogical and historical books shall be placed in said fireproof building in permanent bookcases which shall not be removed or displaced in case of Exhibitions."

\* \* \* \* \* \*

"The balance of said residuary estate I give, devise and bequeath to the Lyme High School Association to be added to the permanent 'MacCurdy-Salisbury Fund' hereinbefore created by me for said High School Association. No part of the income from said Fund shall ever be used for the care or maintenance of any building and grounds, or for additions thereto, unless said building and grounds are a part of the MacCurdy-Salisbury Fund. I direct the said Association to appropriate annually from the available income of said Fund any sum that may be necessary for the proper care and improvement of any and all real estate held as a part of said Fund."

also holds other money received by it from the testatrix during her life and from other sources. It now seeks a declaratory judgment determining a large number of questions which have arisen as to the capacity in which, and the limitations under which, it holds the moneys received from the estate, the management and use of the funds in its hands and the effect and validity of certain of the conditions annexed to the gifts from the testatrix.

In the Third Article the testatrix requests the Association to accept and hold the $12,500 together with any other money or property which comes from her estate to it, and refers to her gift as "all my bequests to said Association"; in the Seventh Article she makes a contingent gift of $10,000 to the Association; in the codicil she directs that during the life of the life tenant of the residuary estate one half of the net income shall be paid annually to the Association; and in the Sixteenth Article she gives the balance of her residuary estate after the death of the life tenant to the Association to be added to the fund she had created in the Third Article. Nowhere in the will is there any provision that the gifts to the Association shall be held by it in trust nor any provision for the way in which they shall be managed and used, except certain conditions which she imposed. The gifts to it are not therefore trusts in the proper sense of the term but are made directly to it to be held and used for its corporate purposes, except as limited by the conditions imposed in the will. *Dwyer* v. *Leonard,* 100 Conn. 513, 519, 124 Atl. 28; *Pierce* v. *Phelps,* 75 Conn. 83, 85, 52 Atl. 612. The stated purpose of the Association being solely the furtherance of education the gifts fall within our statute of charitable uses as it existed when the gifts were made and still does. General Statutes, Rev. 1902,

§ 4026; General Statutes, Rev. 1930, § 5000; *Dwyer* v. *Leonard, supra; Eccles* v. *Rhode Island Hospital Trust Co.,* 90 Conn. 592, 599, 98 Atl. 129; *Corbin* v. *Baldwin,* 92 Conn. 99, 111, 101 Atl. 834; *Hoyt* v. *Bliss,* 93 Conn. 344, 350. The gifts, therefore, in the words of the statute, "shall forever remain to the uses" for which they were given and the mere lapse of the ninety-nine year period fixed for the accumulation of interest will not in any way affect the uses to which they may be put. Not being in trust, but to the corporation for its corporate purposes, they cannot be attacked for uncertainty in the designation of the uses to be made of them or the persons to be benefited by them. To the gifts the testatrix attached certain conditions and by its acceptance of the moneys, the Association became bound to administer them in accordance with those conditions. *State* v. *Blake,* 69 Conn. 64, 73, 36 Atl. 1019; *Spofford* v. *Manning,* 6 Paige (N. Y.) 383, 388; *Bird* v. *Hawkins,* 58 N. J. Eq. 229, 243, 42 Atl. 588. There is nothing illegal in the conditions; the provision for an addition of one third of the income to the principal for ninety-nine years "or as long as the law allows" is not void as an illegal provision for an accumulation, nor at present at least is there any apparent reason why the accumulation should not continue for the full period of ninety-nine years. In the case of gifts to charities the ordinary rule against accumulations does not apply, the only limitation being in the power of the court to take remedial measures should an unreasonable condition result. *Woodruff* v. *Marsh,* 63 Conn. 125, 127, 28 Atl. 846; *Colonial Trust Co.* v. *Waldron,* 112 Conn. 216, 222, 152 Atl. 69.

It was obviously the intent of the testatrix in her will to create a single general fund to be composed of all the money and property received from her estate

under any or all the articles of the will; and the share of the income of her residuary estate, as soon as paid to the Association, becomes a part of the principal of that fund, just as much as does the principal of the residuary estate when turned over to it on the death of the life tenant. Out of this general fund, however, she directed that the special fund of $12,500, with additions of interest, referred to in the Third Article of her will, should be carved. All the money or property received under the will was intended to constitute "The MacCurdy-Salisbury Fund," and should be held and managed as a distinct fund, apart from the other moneys or properties of the Association. The fund should, however, be divided into two accounts, one consisting of the $12,500 special fund, with the additions of income specified, and the other, of all the other moneys and properties received from the estate. Subject to the limitations already stated, one third of the income of each should be added to the principal for the period of ninety-nine years. Both funds are also subject to the condition stated in the Third Article that no part of the income shall be used for educational purposes in any building owned or occupied by the town unless it should first appropriate for teachers' salaries at least as much for the year "as it now appropriates," that is, as it appropriated at the time the will was executed. *Gold* v. *Judson*, 21 Conn. 616, 622. Both funds are also subject to the conditions contained in the Sixteenth Article, that no part of the income shall be used for the care or maintenance of any building or grounds or for additions thereto unless they are a part of the fund and that the Association shall annually appropriate from the income of the fund any sum that may be necessary for the proper care and maintenance of any and all real estate held as a part

of it. The special fund of $12,500, with its additions, is also subject to the limitation of the use of the income from it only for the salaries of the principal and teachers in the Old Lyme graded school, as stated in the Third Article; in the provision that not more than $4000 shall ever be paid in any year toward the salary of the principal and that the salaries of the other teachers shall "be limited in proportion," the "proportion" in the mind of the testatrix was evidently that between the salary of the principal and the amount appropriated toward it from the income of the fund, the purpose being to insure against any undue preference being given to teachers over the principal; and it means that no higher percentage of the salary of any teacher shall be paid from the income of the fund than the percentage of the salary of the principal which is paid from it.

Except for the limitations on the use of the fund received from the testatrix as contained in the will, the uses to which it may be put, as well as the uses to which the other moneys in the hands of the Association may be put, are limited only by the purposes for which the corporation was organized. It may hold real as well as personal property and there is no restriction against the use of "The MacCurdy-Salisbury Fund," aside from the special fund, for the acquisition of lands or buildings within the proper scope and the purposes of the corporation. "Educational purposes" as used in the articles of association is a broad phrase and includes all those uses which reasonably serve the purposes of education as it is commonly understood. "Education is a broad and comprehensive term. It has been defined as 'the process of developing and training the powers and capabilities of human beings.' To educate, according to one of Webster's definitions,

is 'to prepare and fit for any calling or business, or for activity and usefulness in life.' Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all." *Mount Herman Boys' School* v. *Gill,* 145 Mass. 139, 146, 13 N. E. 354. Without entering upon special considerations which might be involved in any specific use, it may be generally stated that educational uses include the following: The payment of additions to the salaries of teachers in the schools of Old Lyme, whether they give instruction calculated to develop the mental powers of pupils or their training in the duties of the home or their appreciation of the finer things of life, such as art and music, or to build up their physical well-being by athletics and recreation; the maintenance in whole or in part of manual and industrial training in such schools; provision for the equipment reasonably necessary to carry on these activities; the furnishing of lectures and moving pictures reasonably adapted to advance the education of the pupils in these schools; the giving of prizes for proficiency in any of the educational activities in such schools and of trips of an educational nature to pupils in them; the payment of transportation of pupils resident in the town to schools outside its boundaries; and the granting of scholarships to students resident in Old Lyme in institutions of learning either within or without the town. There is nothing in the terms of the will which restricts the use of the general fund to schools of a lower grade than that of a high school, but the fund, as well as the moneys of the Association derived from other sources than the estate of the testatrix, may be used for the purposes indicated in any high school, or school giving courses of instruction usual in high schools.

Some of the questions put to us in the reservation are too general to permit a specific answer; others we cannot answer without having before us more detailed facts than are found in the reservation; others do not permit of anything like a categorical answer; and still others involve contingencies which may or may not happen in the future, and, if they do happen, may present problems properly to be determined only upon the facts then appearing, as, for example, the problems which may arise in the contingency that the schools of the town become a part of a larger district. We do not, therefore, attempt any specific answers to the questions propounded, in the belief that our general discussion will be sufficient for the guidance of the trial court in disposing of the case.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.