STANLEY C. CLARK, EXECUTOR (ESTATE OF ELIZABETH E. PLAYFORD) *v.* THE PORTLAND BURYING GROUND ASSOCIATION ET AL.

KING, C. J., MURPHY, SHEA, ALCORN and COMLEY, Js.

528

Argued January 9—decided April 22, 1964

*Paul W. Orth,* for the appellants (plaintiff and named defendant); with him were *Clement J. Kiczuk,* assistant attorney general, and, on the brief, *Ralph G. Murphy,* assistant attorney general, for the defendant Harold M. Mulvey, attorney general.

*Willis G. Parsons, Jr.,* for the appellee (defendant First National Bank of Topeka, Guardian); with him was *P. Corbin Kohn,* guardian ad litem for unknown heirs.

King, C. J. The plaintiff's testatrix, Elizabeth E. Playford, died October 22, 1960, at the age of 85, leaving a simple will dated March 13, 1957, which was duly admitted to probate on March 2, 1961. In it, the testatrix made four bequests of $25 each to four friends, and then disposed of the residue as follows: "Third: I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, of every kind and nature and wherever situated, including lapsed legacies and including any property over which I have any power of disposition by virtue of any power of appointment now or hereafter in existence, to The Portland Burying Ground Association, a corporation organized and existing under the laws of the State of Connecticut, and located in the Town of Portland, State of Connecticut, absolutely, but nevertheless to be held and administered by said Association upon the following terms and conditions, to wit: the net income therefrom to be used by said Association to keep Lot No. 75, located in the 'old part', so-called, of said Association's burying ground and known as the David Shepard Lot, in good condition, and to do whatever is necessary to keep clean, repair, preserve and renew any tomb, monument, or grave mark thereon." The residue of the estate is estimated to be about $15,000, after payment of administration expenses and allowances to counsel in this proceeding.

The Shepard cemetery lot referred to in the will is about 18 by 20 feet in size. On it are three

monuments, one small marble headstone and three markers. The lot contains a total of six graves. The present annual upkeep of the lot is $10; the total replacement cost of the monuments, headstones and markers on the lot would be about $1100; and the cost of cleaning them, an operation which should be performed about every twenty years, would be $30. The parties agreed, and the court found and concluded, that the sum of $3000 would produce an income which, for the foreseeable future, would amply cover all reasonable expenses of carrying out the directions of the testatrix with respect to the lot in question.

The problems presented by the case arise from the excess of income produced by the residuary bequest over and above the amount which can properly be expended in carrying out the terms of the will.[1]

The named defendant claims that the phrase "absolutely, but nevertheless to be held and administered by . . . [the named defendant] upon the . . . [stated] terms and conditions" created an outright gift of the entire residue to it, subject only to an obligation to carry out the directions of the testatrix as to the upkeep of the cemetery lot and the monuments and markers thereon. This claim involves a distortion of the terms of the will. It is reminiscent of, and as obviously invalid as, a similar claim rejected by this court in *Fairfield* v. *Lawson,* 50 Conn. 501, 514. See also *Townsend* v. *Wilson,* 77 Conn. 411, 414, 59 A. 417.

It is important to bear in mind that the testatrix had a right to make such lawful disposition of her

---

[1] This bequest was not made to a town, and, therefore, no claim was made that the provisions of General Statutes § 19-155 as to the disposition of excess income were applicable.

own property as she pleased. Even if a court were to find that a bequest or devise was unjust or unwise, it would have no power, merely on the basis of that finding, to invalidate the disposition. See cases such as *Billings' Appeal,* 49 Conn. 456, 461 (gift for promotion of spiritualism), and *Maroncelli* v. *Starkweather,* 104 Conn. 419, 429, 133 A. 209. On the other hand, the right to dispose of property by will is a privilege and can be exercised only in accordance with the conditions and restrictions which the law places on the exercise of that privilege. *Hatheway* v. *Smith,* 79 Conn. 506, 511, 65 A. 1058. In other words, if the court has the power to declare any part of this residuary bequest invalid, it must be because that part is actually invalid as distinguished from being merely ill-advised.

If the bequest, in whole or in part, is for any reason invalid, then to the extent of that invalidity the will fails to make an effective disposition, and, since the attempted disposition is in the residuary clause, the subject matter would be intestate property. *Bristol* v. *Bristol,* 53 Conn. 242, 260, 5 A. 687. This would be the case, for instance, in the event of a gift in violation of the rule against perpetuities, as in *Greenwich Trust Co.* v. *Shively,* 110 Conn. 117, 125, 147 A. 367; or of a gift invalid because of inadequate designation of the beneficiaries, as in *Bristol* v. *Bristol,* supra, 256, and *Fairfield* v. *Lawson,* supra, 503, 512; or of a gift invalid as offending the rule against unreasonable restraints on alienation, as in *Alexander* v. *House,* 133 Conn. 725, 728, 54 A.2d 510, and *Colonial Trust Co.* v. *Brown,* 105 Conn. 261, 281, 135 A. 555.

It is also important to note that this is not a situation where a testator makes a provision,

inordinate in amount, for the outright purchase of a very expensive monument or mausoleum. In such a situation it might well be that a court would have no right to interfere with the carrying out of the testamentary intention clearly expressed to make such a disposition, however unfair it might be to the heirs at law or residuary legatees or devisees, or however unreasonably large it might be in the light of the testator's entire estate. See notes, 55 A.L.R. 1303, 47 A.L.R.2d 596, 628, § 18.

The bequest for the upkeep of a private cemetery lot is clearly authorized by what is now § 47-2 of the General Statutes.[2] The quoted provision of the statute as to cemeteries, cemetery lots and monuments thereon originally was separately enacted in almost identical wording as chapter XXXVI of the Public Acts of 1885, entitled "An Act relating to Charitable Uses." Subsequently, in § 2951 of the Revision of 1888, which combined the act of 1885 with § 2 of part 1 of chapter VI of title 18 of the Revision of 1875, page 352, the statute took substantially its present form. The 1885 act was obviously passed to change the rule laid down in *Coit* v. *Comstock*, 51 Conn. 352, 386, insofar as that case held that such a bequest was invalid if it was to be operative beyond the period permitted by the rule against perpetuities. See Restatement (Second), 1 Trusts § 124, comments d, f; 2 id. § 418, comment b; 4 Scott, Trusts (2d Ed.) § 374.9, p. 2690. The 1885 statute did not purport to, nor did it, denominate, as charitable, such a clearly non-

[2] "Sec. 47-2. CHARITABLE USES. All estates granted . . . for the preservation, care and maintenance of any cemetery, cemetery lot or monuments thereon, . . . shall forever remain to the uses to which they were granted, according to the true intent and meaning of the grantor, and to no other use whatever."

charitable bequest. Any confusion as to this point arises because of the action of the revisers of the 1888 Revision in combining the 1885 act with the statute concerning charitable uses, an action which may have been induced by the misleading title given to the 1885 act. The cemetery association's claim that the bequest in question is a charitable bequest is not only contrary to reason but is contrary to the case law of this state. *Coit* v. *Comstock,* supra; *Alexander* v. *House,* supra. It is also contrary to the case law generally. Note, 47 A.L.R.2d 596, 601 § 2, 603 § 3; 2 Scott, op. cit. § 124.2, p. 872; 4 Scott, op. cit. § 374.9, p. 2688; 10 Am. Jur., Charities, § 75. General Statutes § 47-2, in the light of its history, effectually absolves such a bequest from invalidity under the rule against perpetuities. But it does not make such a bequest a charitable one. This was necessarily recognized in *Weed* v. *Scofield,* 73 Conn. 670, 679, 49 A. 22, decided long after the 1885 act. Thus, in this case we have no charitable bequest, and, therefore, we are not concerned with the cy pres doctrine or any other phase of the law of charitable trusts or uses.

Section 47-2, besides saving the bequest from invalidity by removing it from the operation of the rule against perpetuities, also makes clear that the fund "shall forever remain to the uses to which . . . [it was] granted according to the true intent and meaning of the grantor, and to no other use whatever." This latter provision precludes the diversion of the income of the bequest to any other purpose than the stated particular, specified one of the upkeep of the designated lot and stones. It adversely disposes of the plaintiff's claim that the excess income should go to the cemetery association for the improvement or enlargement of its ceme-

tery. Comment c of § 400 of Restatement (Second), 2 Trusts, on which the plaintiff relies, applies solely to charitable trusts.[3] The same is also true of our own case of *Hoyt* v. *Bliss*, 93 Conn. 344, 353, 105 A. 699.

Here we are faced with a situation where the income reasonably to be anticipated from the fund of $15,000 at a rate of even one percent per annum will exceed the amount which can be legitimately expended for the purposes named. Except during the relatively near future, it would not be feasible to disburse the excess income annually to the heirs at law, since the income will continue forever and the heirs will become increasingly difficult to ascertain and locate as the years pass by. "It is of course out of the question that the . . . [excess] income should *in perpetuo* be distributed to the heirs at law." *Bristol* v. *Bristol*, 53 Conn. 242, 258, 5 A. 687. The alternative of allowing the excess income to accumulate forever would serve no useful purpose, nor would it be administratively feasible, even aside from any question of the validity of such a course under the rule of cases such as *Gaess* v. *Gaess*, 132 Conn. 96, 101, 42 A.2d 796, and *Colonial Trust Co.* v. *Waldron*, 112 Conn. 216, 222, 152 A. 69. The only practical solution is to hold invalid the disposition of so much of the residue as exceeds the amount

[3] "c. Charitable corporation or association. If property is given to a charitable corporation to be applied to one of the purposes of the corporation, and the purpose is fully accomplished without exhausting the trust property, the court will direct the application of the surplus by the corporation to the other charitable purposes of the corporation, unless the settlor manifested an intention to restrict his gift to the particular purpose which he specified. Similarly, if property is given to an unincorporated charitable association for one of its purposes which is fully accomplished without exhausting the trust property, ordinarily the surplus can be applied to the other charitable purposes of the association."

reasonably required to provide a fund the income from which will amply ensure the proper execution of the testatrix' directions as to the use of the income from the fund. In this way the expressed intention of the testatrix will be carried out in the care of the cemetery lot, including the monuments and markers thereon, while at the same time the accumulation of excess income with no feasible legal way of disposing of it will be avoided. This is, in effect, the method approved in *Bristol* v. *Bristol,* supra.

As we understand the pleadings and the finding, no distribution of the residue has yet been made. This being so, the legal title to the residue has not yet passed into the hands of the cemetery association but still remains in the executor. 2 Locke & Kohn, Conn. Probate Practice §§ 264, 376. Thus, this case differs from otherwise similar cases where an excess of income first develops after distribution and a resulting trust may have to be impressed on the excess corpus in order to get it back into the hands of the heirs at law. *Connecticut Bank & Trust Co.* v. *Coles,* 150 Conn. 569, 577, 192 A.2d 202; *Bassett* v. *Pallotti, Andretta & Co.,* 117 Conn. 58, 62, 166 A. 752; Restatement (Second), 2 Trusts §§ 430, 432. In this case, we see no occasion for resorting to the imposition of a resulting trust since the partial invalidity has become certain before distribution. Restatement (Second), 2 Trusts § 411, comment d; see *Bristol* v. *Bristol,* supra.

The court below concluded that the residuary bequest to the cemetery association constituted a trust. The presence or absence of the word "trust" is not conclusive of the testatrix' intention, which is the controlling factor. *Winchester* v. *Cox,* 129

Conn. 106, 111, 26 A.2d 592; *FitzGerald* v. *East Lawn Cemetery, Inc.*, 126 Conn. 286, 289, 10 A.2d 683. The $3000 portion of the corpus for the upkeep of the lot is by statute exempted from the operation of the rule against perpetuities, even though it is not a charitable bequest. But under the statute the corpus must be forever held by the cemetery association and the income expended for the purposes stipulated by the testatrix and for no other purposes. And under General Statutes § 19-150, the corpus must be invested as required in the case of trust funds. This is true whether or not a true trust exists. Although not a charitable bequest, it is analogous to gifts to charitable institutions or corporations where the income is to be applied to the furtherance of the general, or to specified, purposes of the institution or corporation. Such gifts, although possessing many, but not all, of the attributes of trusts, are more aptly termed quasi trusts. *Winchester* v. *Cox,* supra, 112; *Lyme High School Assn.* v. *Alling,* 113 Conn. 200, 204, 154 A. 439; Restatement (Second), 2 Trusts § 348, comment f; 4 Scott, op. cit. § 348.1. Section 47-2 of the General Statutes precludes any diversion from the uses expressed by the testatrix whether the bequest is, or is not, technically a trust. *Legat* v. *Adorno,* 138 Conn. 134, 146, 83 A.2d 185. Whether the court correctly held that the bequest was a strict trust, even as to the $3000 portion which was valid, is unimportant in the resolution of the issues of this appeal and need not be determined.

The court concluded, as indicated above, that the sum of $3000 is sufficient to carry out the purposes of the testatrix; and it further concluded that the excess should be impressed with a resulting trust "for the benefit of the estate of the testatrix and

her heirs at law". This latter conclusion was not only included in the finding but was embraced in the second part of the judgment. This is technically erroneous in that the excess over $3000 is ineffectually disposed of by the will and consequently is intestate property, to be distributed as such.

There is error in the form of the judgment only, and the case is remanded for correction of the second part of the judgment to eliminate the provision impressing a resulting trust on the excess over $3000 and to substitute therefor an adjudication that such excess is intestate property in the hands of the executor and distributable as such to the testatrix' heirs at law.

In this opinion the other judges concurred.